**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

July 1, 2015

Usable Life Insurance Company
2908 Poston Avenue, % Corp. Svc. Co.
Nashville, TN 37203
NAIC # 94358

Certified Mail
Return Receipt Requested
7012 3460 0002 8949 8799
Cashier # 20905

Re:    Kathy J. Valentine  V.  Usable Life Insurance Company

Docket # 15-CV-377-II

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of Commerce and Insurance was served June 30, 2015, on your behalf in connection with the above-styled proceeding. Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Sevier County
    125 Court Avenue, Ste 204E
    Sevierville, Tn 37862

**EXHIBIT**

**A**

# IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

**KATHY J. VALENTINE,**

      Plaintiff,

vs.

**USABLE LIFE,**

      Defendant.

No: 15-CV-377-II

**JURY DEMANDED**

RITA D. ELLISON, CLERK
SEVIER COUNTY, TN
2015 JUN -8 AM 8: 23
CIRCUIT COURT
FILED

## SUMMONS

To:    **USAble Life**
      **Claim No. 340741**

      **c/o Insurance Commissioner for the State of Tennessee**
      **5th Floor, Davy Crocket Tower**
      **500 James Robertson Parkway**
      **Nashville, TN 37243-0565**

      You are hereby summoned and required to serve upon Richard T. Scrugham, Jr., whose address is P. O. Box 39, Knoxville, Tennessee 37901 and answer the complaint herewith served upon you within 30 days after service of this summons and complaint upon you, exclusive of the day of service. If you fail to do so, judgment by default can be taken against you for the relief demanded in the complaint.

      Issued and attested this ___8___ day of June, 2015.

                    *Rita D. Elli*
      Clerk

                    *Noah Gotahoo*
      Deputy Clerk

COPY

# NOTICE

<u>To the defendants:</u>

Tennessee law provides a ten thousand dollar ($10,000.00) personal property exemption from execution or seizure to justify the judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you should file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, **unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list**. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption rights or how to exercise it, you may wish to seek the counsel of a lawyer.

## SERVICE INFORMATION

**To the process server:** Defendant **USAble Life** may be served with process **through the Insurance Commission for the State of Tennessee, 5th Floor, Davy Crocket Tower, 500 James Robertson Parkway, Nashville, TN 37243-0565.**

### RETURN

I received this summons on the _____ day of _____, 2015.

I hereby certify and return that on the ___ day of _____, 2015, I:

[ ]     served this summons and a complaint on Defendant **USABLE LIFE,** in the following manner:

_____

_____

[ ]     failed to serve this summons within 90 days after its issuance because:

_____

_____

_____

Process Server

# NOTICE

## (To be sent along with Summons, Subpoenas, Juror Summons or other order compelling participation in a judicial program)

The Americans with Disabilities Act prohibits discrimination against any qualified individual with a disability. The Tennessee Judicial Branch does not permit discrimination against any individual on the basis of physical or mental disability in accessing its judicial programs. In accordance with the Americans with Disability Act, if necessary, the Tennessee Judicial Branch will provide reasonable modifications in order to access all of its programs, services and activities to qualified individual with disabilities.

This notice is provided as required by Title II of the Americans with Disabilities Act of 1990.

If you require modification to access the judicial program and/or have special needs because of a qualified disability, you must submit a written **Request for Modification** to the Local Judicial Program ADA Coordinator listed below at least five (5) business days prior to the date of the judicial program, if possible. A form is available from the Local Judicial Program ADA Coordinator or from the Tennessee Judicial Program ADA Coordinator.

If you need assistance, have questions or need additional information, please contact the Local Judicial Program ADA Coordinator:

Mr. Larry Russell
**Sevier County ADA Coordinator**
125 Court Avenue, Suite 201E
Sevierville, TN 37862

If you need assistance, have questions or need additional information, you may also contact the Tennessee Judicial Program ADA Coordinator:

David Haines, Manager/Coordinator
State Judicial ADA Program
511 Union Street, Suite 600
Nashville, TN 37219
Telephone: (615) 741-2687 or (800) 448-7970
Facsimile: (615) 741-6285
E-Mail: adacoordinator@tncourts.gov

The Tennessee Judicial Branch Americans With Disabilities Act Policy Regarding Access to Judicial Programs, as well as a Request for Modification form may be found online at www.tsc.state.tn.us

S:\WDOX\CLIENTS\6601\0000001\SUMMONS\01275765.DOCX

# IN THE CIRCUIT COURT FOR SEVIER COUNTY, TENNESSEE

**KATHY J. VALENTINE,**

      Plaintiff,

vs.

**USABLE LIFE,**

      Defendant.

No: _____ 15-CV-371

**JURY DEMANDED**



## COMPLAINT

COMES the Plaintiff, Kathy J. Valentine ("Plaintiff"), and sues the Defendant USAble Life ("Insurer"), and for her causes of action says:

1.     The Plaintiff is a citizen and resident of Sevierville, Sevier County, Tennessee.

2.     The Defendant Insurer is an Arkansas corporation, with its primary offices in Little Rock, Arkansas and that service of process may be achieved upon the Defendant through the Commissioner of the Tennessee Department of Commerce and Insurance.

3.     The Plaintiff's employer, the City of Pigeon Forge, Tennessee (the "Employer"), contracted with the Defendant to provide a group long-term disability insurance policy, underwritten by the Defendant, for the benefit of the Plaintiff and the Employer's other employees. The Group Policy Number was 50000515-LTD (the "Policy"), and the original policy date was May 1, 2010. The Policy was renewed and maintained by the Employer throughout the remaining time of the Plaintiff's employment with the City of Pigeon Forge. A

(1)

copy of the original Policy, including a Schedule of Renewal from the Insurer Schedule noting the renewal of the policy on July 1, 2013, is attached as Exhibit A.

4. The Plaintiff was hired by the City of Pigeon Forge on October 27, 1987, when she was 27 years old. She was originally hired as a Payroll and Personnel Clerk. The Plaintiff worked for the City of Pigeon Forge for more than 25 years. She was eventually promoted, and worked for much of her career as the Human Resources Administrator for the City, the position she held when she left the City's employment in 2013.

5. For the last several years of her employment with the City of Pigeon Forge, the Plaintiff began suffering from both physical and mental health problems. The Plaintiff's declining health caused her to stop working for the City of Pigeon Forge in early 2013.

6. The Plaintiff stopped working on February 11, 2013, and took medical leave under the Family Medical Leave Act (FMLA). This was approved by her Employer through early May 2013.

7. Knowing that she would be unable to return to work for her Employer due to her health, Kathy Valentine filed a claim for long term disability (LTD) benefits with her Employer's LTD carrier, the Defendant USAble Life, in early May 2013.

8. As a part of the application process, the Plaintiff requested that her primary care provider, Advanced Practice Nurse / Nurse Practitioner Sandra Byrd of Pigeon Forge, complete a questionnaire regarding the Plaintiff's ability to work. NP Sandra Byrd completed the Defendant's physician's disability statement on or about May 15, 2013, and stated her opinion that the Plaintiff was disabled from working, had been so for some time, and that she was not expected to improve in the future.

9.     In addition, NP Byrd stated her opinion that Ms. Valentine's inability to work applied to both her own job and other jobs available to her. She did not believe the Plaintiff was a suitable candidate for occupational rehabilitation. She also believed that Kathy Valentine's current position (as the Human Resources Administrator for the approximate 400 employees of the City of Pigeon Forge) could not be modified to work with her current impairment.

10.     At the time, NP Sandra Byrd was on a panel of medical providers that the City of Pigeon Forge provided to its employees who needed medical treatment.

11.     The Defendant USAble hired a "medical consultant" named Melanie A. Sperry, a registered nurse not licensed in the State of Tennessee and who had never interviewed or examined the Plaintiff, to assist the Defendant in its review of the Plaintiff's claim. Based in part on Nurse Sperry's opinion that the Plaintiff was not impaired, the Defendant USAble denied the Plaintiff's claim for long term disability benefits on or about August 2013.

12.     The Plaintiff disagreed with the decision issued by the Defendant and appealed this decision with the carrier in October 2013, including the submission of additional medical evidence by the Plaintiff.

13.     The Defendant USAble, in response to the appeal request and to additional evidence from the Plaintiff, then hired a neurologist practicing in New Hampshire, Dr. Richard L. Levy, to review the Plaintiff's claim. Dr. Levy, like Nurse Sperry, also opined that the Plaintiff Kathy Valentine was not disabled from working. Also like Nurse Sperry, Dr. Levy never examined or spoke to the Plaintiff prior to rendering his opinion.

14.     The Defendant USAble denied the Plaintiff's claim after her appeal.

15.     In January 2014, the Plaintiff filed a second appeal with the Defendant regarding her LTD claim. This appeal was denied as well.

16. On July 23, 2014, counsel for the Plaintiff sent a letter to the Defendant, pursuant to Tenn. Code. Ann. § 56-7-105(a), and provided notice that Ms. Valentine intended to file an action against USAble Life for bad faith denial of her claim for LTD benefits in the courts of Sevier County, Tennessee. The Defendant refused to pay the claim within 60 days of this demand.

17. The Defendant has wrongfully and in bad faith refused to pay the Plaintiff the long term disability benefits to which she is entitled. The LTD coverage provided by the Plaintiff's Employer, the City of Pigeon Forge, Tennessee, was a benefit available to all employees who became disabled during their employment. In denying these benefits to the Plaintiff, the Defendant has violated the Plaintiff's contractual rights and caused her to suffer damages, for which she is entitled to seek relief from this Court.

## COUNT I

### BREACH OF CONTRACT WITH RESPECT TO DENIAL OF CLAIM

18. The Plaintiff realleges and incorporates herein by reference paragraphs 1 through 17 of this Complaint.

19. An insurance contract for long term disability benefits existed at all times pertinent to this action between the Defendant and the Plaintiff's employer, the City of Pigeon Forge, and the Plaintiff Kathy Valentine was a beneficiary and insured under this contract and was in privity with the Defendant as a result.

20. The Defendant's denial of the Plaintiff's claim for long term disability benefits was a violation of the contract terms of the Policy. The Defendant breached its contractual obligations to the Plaintiff through its wrongful conduct.

(4)

21.     That as a direct and proximate result of the Defendant's breach of contract, the Plaintiff has suffered actual contract damages, including all benefits she would have received under the Policy, both past and future benefits, had the Defendant not wrongfully denied her claim.

**COUNT II**

**BAD FAITH PENATLTY**
**CODIFIED IN TENNESSEE CODE ANNOTATED SECTION 56-7-105**

22.     The Plaintiff realleges and incorporates herein by reference paragraphs 1 through 21 of this Complaint.

23.     The Defendant refused to make any payment on the Plaintiff's claim for long term disability benefits in accordance with the terms of the Policy within sixty days after demand was made by the Plaintiff.

24.     The Defendant is liable for the amount due the Plaintiff in accordance with the terms of the Policy and for interest which has accrued since the Defendant denied the Claim.

25.     The Defendant's refusal to pay the Claim was not in good faith and such failure to pay inflicted additional expense or loss upon the Plaintiff, including, but not limited to, attorney fees and loss of the use of the funds which the Plaintiff was wrongfully denied by the Defendant's actions.

26.     The Defendant is liable for an additional penalty of 25% of the total demanded in the Claim, pursuant to Tenn. Code Ann § 56-7-105(a).

(5)

**WHEREFORE**, the Plaintiff demands a twelve-person jury to hear this cause of action and would ask the Court to grant her the following relief:

1. That process be issued and served on the Defendant USAble Life.

2. That a jury be empaneled to hear all issues of fact joined by the parties.

3. That the Plaintiff be awarded damages to which she is entitled as a result of the Defendant's breach of contract for failure to pay the Plaintiff's Claim, including, but not limited to, the value of the Plaintiff's lost benefits, past and future, liquidated damages, pre-judgment interest and attorney's fees, litigation expenses and costs.

4. That the Plaintiff be awarded damages for the Defendants' violation of Tenn. Code Ann. §56-7-105(a), including, but not limited to, the statutory 25% bad faith penalty, plus interest on the amount of the Claim.

5. That the Plaintiff be awarded any further relief to which she may be entitled under law, including, but not limited to, applicable pre-judgment and post-judgment interest, applicable attorney fees, costs and expenses.

Respectfully submitted this the 8th day of June, 2015.

Richard T. Scrugham, Jr. (BPR No. 20972)
**FRANTZ, MCCONNELL & SEYMOUR, LLP**
P.O. Box 39
Knoxville, TN 37901
(865) 546-9321
Attorney for Plaintiff Kathy J. Valentine

## COST BOND

We hereby acknowledge ourselves as surety for the plaintiff in this cause for the payment of all costs, which may be awarded against the plaintiff pursuant to Tenn. Code Ann. § 20-12-120.

This 8th day of June, 2015.

_____
Richard T. Scrugham, Jr., Partner
Frantz, McConnell & Seymour, LLP

S:\WDOX\CLIENTS\6601\0000001\COMPLAIN\01188975.DOC

(7)



**USAble Life**

320 W. Capitol • PO Box 1650 • Little Rock, AR 72203-1650
(501) 375-7200 • (800) 648-0271

---

**POLICYHOLDER:**
CITY OF PIGEON FORGE

**PREMIUM DUE DATE:**
First Day of Each Policy Month

**POLICY NUMBER:**
50000515-LTD

**ANNIVERSARY DATE:**
May 1, 2011 and Each
Succeeding May 1

**EFFECTIVE DATE:**
May 1, 2010

**STATE OF DELIVERY:**
TENNESSEE

USAble Life agrees with the policyholder to insure covered persons who are entitled to the insurance provided by this policy. This policy is issued in consideration of the application of the policyholder, and the payment of the first premium. The first premium is due and payable on the effective date of the policy. Subject to the policy's grace period provision, all premiums after the first must be paid when or before they are due.

This policy is a legal contract between the policyholder and USAble Life. PLEASE READ THIS POLICY CAREFULLY.

Signed for USAble Life:

Secretary

President

Nonparticipating
Renewable
**GROUP LONG TERM DISABILITY INSURANCE POLICY**

LTD-P (5-09)                                    1

EXHIBIT A

# Table of Contents

**Page**

Summary of Group Insurance......................................................................................... 2

Section 1 – Schedule of Insurance................................................................................ 3

Section 2 – Associated Company.................................................................................. 4

Section 3 – Incorporation Provision............................................................................... 4

Section 4 – Premium Provisions.................................................................................... 5

Section 5 – Policy Provisions......................................................................................... 6

Section 6 – Self Administered Provisions...................................................................... 8

# Summary of Group Insurance

This summary is intended to help the policyholder and the covered persons understand the group insurance policy. It does not change any of its provisions.

**Long Term Disability Insurance**
The policy pays a monthly benefit designed to partly replace income lost during periods of disability that result from injury, sickness, or pregnancy.

A covered person who remains disabled during the elimination period may become eligible to receive a monthly benefit based on his basic monthly earnings. These benefits are payable while the disability continues, or until the Maximum Benefit Period ends. Both the Elimination Period and the Maximum Benefit Period are explained in the Schedule of Insurance(s) of the certificate.

If a disabled person receives benefits from other sources, we may reduce the benefits payable under the policy. There are also certain disabilities for which benefits are not paid or are limited. These provisions are explained in the certificate.

**Please read the insurance policy carefully.**

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 13 of 59   PageID #: 17

## · Section 1 — Schedule of Insurance

**Policyholder:**          CITY OF PIGEON FORGE

**Policy Number:**        50000515-LTD

**Policy Effective Date:**  May 1, 2010

**Renewal Date:**         Refer to the Certificate(s) of Insurance

The Schedule(s) of Insurance for the Group Long Term Disability Insurance Policy are shown in the Certificate(s) of Insurance.

The Schedule of Insurance will control the:
1. benefit amounts and maximum limits;
2. eligibility and effective date rules;
3. the elimination period and other schedule amounts and limits,

which apply to the employees of the policyholder.

LTD-P (5-09)                                3

## Section 2 – Associated Company

We will insure the eligible employees of the policyholder's affiliates or subsidiaries listed on the Group Insurance Application.

### Newly Acquired Organizations
The policy applies only to the policyholder as composed on the effective date of the policy or as thereafter amended.

New employees acquired through merger, stock purchase, exchange of stock, or otherwise may be covered under the policy. Their coverage is subject to the following conditions:
1. that the policyholder report to us the name of the newly acquired organization along with any underwriting data we may need to determine the correct premium;
2. that we accept the newly acquired organization for coverage; and
3. that the policyholder pay the correct additional premium.

Coverage will start in accordance with the "Eligibility and Effective Date" provisions in the certificate. In no case, however, will coverage continue for more than 60 days after the acquisition or merger unless:
1. the required report has been made; and
2. the newly acquired organization has been accepted for coverage and the additional premium has been agreed on and paid.

The policyholder must pay for any period in which coverage is in effect.

## Section 3 – Incorporation Provision

### Certificate
The certificate(s) and the endorsement(s) or rider(s), which are attached to this policy are hereby incorporated in, and made a part of, this policy. If there is any conflict between the terms and conditions of this policy and an attachment, this policy shall be controlling.

The terms found in the certificate(s) include :
1. the benefit plan provisions;
2. the eligibility and effective date of insurance rules;
3. the termination of insurance rules; and
4. exclusions.

LTD-P (5-09)                                        4

# Section 4 – Premium Provisions

**Premium Payments**

The policyholder must pay all premiums in advance at our Home Office or to one of our agents in accordance with the policy application, which is incorporated as the signature page of this policy upon acceptance and issuance of this policy by USAble Life. The policyholder may request on any policy anniversary that the frequency of premium payment be changed to any frequency we offer for such policy.

**Calculation of Premiums**

The first premium is due on the policy effective date. Payment of that premium shall constitute acceptance of the policy. Future premiums are due on each premium due date. The premium is based on the premium rate and the amount of insurance in effect for the month reported on the premium due date. We will furnish premium rates to the policyholder with an explanation of how to apply them.

No premium is due for a person who is entitled to receive long term disability insurance benefits.

**Our Right to Change Premium Rates**

We may change the premium rate:

1. after the first renewal date;
2. at the end of any rate guarantee period; or
3. when our liability changes.

Payment of the changed premium rate shall constitute acceptance of that change.

Unless our liability changes:

1. we will not change the rates more than once in any period of 12 consecutive months; and
2. we will give the policyholder 31 days advance written notice of an increase in rates.

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 16 of 59   PageID #: 20

## Section 5 – Policy Provisions

**Entire Contract**
The contract between the parties consists of:
1. the policy, any amendments and addenda; and
2. the application of the policyholder, a copy of which is attached to and made a part of the policy when issued, as may be amended during the term of this policy; and
3. the certificates, and the endorsements or riders which is attached to and made a part of the policy when issued; as may be amended during the term of this policy; and
4. the enrollment forms, if any, of each covered person.

All statements made by the policyholder and persons insured under the policy will be deemed representations and not warranties. No statement will be used in any contest unless it is in writing and a copy of it is given to the person who made it, or to his authorized representative.

**Incontestability**
Except for non-payment of premium, the insurance provided to each covered person by the policy cannot be contested after a period of two (2) years from the effective date of each covered person.

**Changes to the Policy**
The policyholder owns the policy. We may change any or all of the provisions of this policy by notifying the policyholder. We must give the policyholder at least 31 days advance written notice of any change, unless the policyholder accepts that amendment during that period. The policy may also be changed in whole or in part when there is any change in laws or regulations which affect our obligations under the policy. A change must be approved by one of our executive officers. No agent can change the policy or waive any of its provisions. Payment of the applicable premium following any change of this policy in accordance with this section shall constitute acceptance of that change.

**Grace Period**
We will allow the policyholder a 31 day grace period for the payment of all premiums after the first. During this 31 day period, the policy will stay in force. If the owed premium is not paid by day 31, the policy will automatically terminate retroactive to the last day that the applicable premiums had been paid. If the policyholder gives us written advance notice of an earlier cancellation date, the policy will terminate on the earlier date.

**Termination of Policy**
For Cause
1. We may terminate this policy if we do not receive any premium when due in accordance with the Grace Period provision of the policy.
2. Either party may terminate this policy upon 30 days advance written notice, if the other party breaches its obligations and fails to cure that breach to the other party's reasonable satisfaction within that 30 day notice period.
3. Either party may terminate this policy, with or without prior notice, effective as of midnight prior to the date that the other party:
   a. ceases doing business as a going concern;
   b. makes an assignment for the benefit of creditors;
   c. admits in writing that it is unable to pay debts as they come due; or

   d.  consents to the appointment of a trustee or receiver; or if a trustee or receiver is appointed pursuant to applicable Federal or State bankruptcy, insolvency or similar laws.

4.  We may terminate this policy, upon not less than 30 days written notice if the employer fails to comply with a material plan provision relating to the employer's premium contribution or group participation rules or if we determine there has been a material change affecting the risk assumed under this policy.

5.  Upon written notice, we may terminate or rescind the policy or the coverage on a covered person for fraud or misrepresentation by the employer or a covered person of material fact concerning the employer or covered person.

<u>Because of Inability to Perform Obligations</u>
The policy may be immediately suspended or terminated by written notice to the other party if either party is unable to perform its obligations for reasons beyond its control, including:

    1.  complete or partial destruction of facilities or equipment;
    2.  lockout, strike, riot, war, act of God, or any ordinance, law, order or decree of any governmental authority.

Neither party will be required to perform its duties nor be liable for any damages arising from the suspension or termination of this policy pursuant to this provision.

## Certificate

We will give the policyholder an individual certificate for distribution to each covered employee. The certificate is part of the policy, and will explain the important features of the policy.

## Data to Be Furnished

The policyholder will give us all information we need regarding matters pertaining to the insurance. At any reasonable time while the policy is in force and for one year after that, we may inspect any of the policyholder's documents, books, or records which may affect the insurance or premiums of this policy.

If the policyholder gives us any incorrect information, the relevant facts will be reviewed to establish if insurance is in effect and in what amount.

No person will be deprived of insurance to which he is otherwise entitled or have insurance to which he is not entitled, because of any misstatement of fact by the policyholder or covered individual. Any required adjustment may be made in coverage, premiums or benefits. However, payment of premium by or on behalf of an ineligible person will not entitle that person to coverage.

## No Replacement for Workers' Compensation

The policy does not replace Workers' Compensation or affect any requirement for Workers' Compensation coverage.

## Time Period

All periods begin and end at 12:01 a.m., standard time, at the policyholder's address.

## Jurisdiction

The laws of the state where it is delivered govern this policy.

LTD-P (5-09)

7

## Section 6 – Self-Administered Provisions

The Parties to this provision are USAble Life and the policyholder.

### Statement of Work
As a Self-Administered Group with respect to this policy, it is the responsibility of the policyholder to properly enroll its eligible employees for insurance coverage; to accurately collect premium for each employee's coverage; to remit that premium to us, and to maintain all documentation necessary for the administration of the coverages shown on the Schedule of Insurance.

### The Policyholder's Obligation
The policyholder agrees to perform, while this policy is in force, the following functions:
1. verify eligibility, as defined under the policy;
2. obtain enrollment documentation for its eligible employees on forms approved and acceptable to us, such documentation to contain sufficient information to establish proof of coverage;
3. forward all enrollment documentation for coverage that requires underwriting approval to us immediately upon receipt and inform employees that coverage is not effective until approved in writing by us;
4. maintain enrollment documentation containing proof of coverage and beneficiary designations and changes thereto;
5. provide us on an annual basis, or as requested, and no less than 90 days prior to the Anniversary Date of the policy a census of all covered persons including the following data:
   a. Full name;
   b. Date of birth;
   c. Gender;
   d. Basic Monthly Earnings;
   e. Class or coverage amount by type of coverage;
   f. Occupation;
6. remit timely payment of premiums in accordance with the policy's premium provisions;
7. enforce all policy provisions including, but not limited to, guaranteed issue (GI) amount of coverage, if applicable; late enrollee requirements; Eligibility and Effective Date provisions; limits of coverage, and changes in coverage;
8. deliver certificates of insurance to each eligible employee within 30 days of the covered person's effective date of coverage. We reserve the right to review and modify, if necessary, any and all materials pertaining to the benefits provided by us, to ensure accuracy and compliance with the policy, the certificate of insurance, and any applicable federal or state law.

### Terms
1. As a Self-Administered Group, the policyholder will cooperate in audits performed by us and will provide all documentation required within the requested time frame. Such audits not to occur more frequently than once per 12-month period.
2. As a Self-Administered Group, the policyholder shall be responsible for proper deductions and administration of payroll functions for benefits that are funded partially or wholly by employees. Failure to deduct the proper amount, the calculation of which is determined by the Premium provisions of the policy, and duties listed in this Section of the policy will in no

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 19 of 59   PageID #: 23

way increase our liability. We do not retain or exercise the right to direct, control or supervise the policyholder as to the policyholder's procedures for premium collection and reporting.

3. As a Self-Administered Group, the policyholder agrees to make an equitable adjustment of premiums, upon our approval, based on either or both of the following factors:
   a. the amount of premium due based on the covered person's coverage;
   b. the difference between the premium paid and the premium which would have been paid if the covered person's coverage had been correctly stated.

4. As a Self-Administered Group, the policyholder is responsible for compliance with applicable federal and state laws and specifically assumes exclusive responsibility for collection of premiums and the reporting of accurate premiums to us.

5. Enrollment periods and the period of time for any enrollment must be approved in writing by us. Enrollment documentation submitted after such approved enrollment period will require Evidence of Insurability (EOI) on a form acceptable to us, and coverage will not be effective until approved in writing by our Underwriting Department.

**Underwriting Approval**
The policyholder may not alter, amend or expand the underwriting approval limits specified in the policy or certificate of insurance. All individual applications that require underwriting approval, as identified in item 3 of The Policyholder's Obligations provision above, must receive our written approval before coverage shall become effective.

**Records**
All enrollments, beneficiary and premium records, and supplies kept by the policyholder relating to this Section of the policy shall be opened for inspection/audit by us or our representative at all reasonable times during the continuance of this policy. All such records and supplies shall be retained until authorization for their destruction is obtained from us.

**Assignment**
The obligations of the policyholder set out in this Section shall not be assignable, nor may any of its functions or duties be delegated without our prior written consent.

**Termination**
Either party may terminate self-administration of the policy by providing 30 days written notice to the other party. Notice shall be sent by certified mail and shall be effective upon receipt. The provisions of this Section shall terminate at the end of the month following the expiration of the 30 days.

**Notice**
Notice required to be given to us under this Section shall be sent to our address Attention: Corporate Document Manager. Notice required to be given under this Section to the policyholder shall be sent to the address shown in our records.

**Hold Harmless and Indemnification**
As a Self Administered Group, the policyholder shall indemnify and hold harmless USAble Life, its parents, affiliates, officers, directors, agents, successors, assigns and employees against any and all claims, demands and expenses of all kinds made against or incurred by us, resulting from or arising out of any act, negligence or misconduct of the policyholder or any agent, employee or representative of the policyholder in connection with the policyholder's duties hereunder.

LTD-P (5-09)                                    9

## Confidentiality

The Financial Services Modernization Act (Gramm-Leach-Bliley Act), hereinafter "GLB" requires that all parties that perform services on behalf of the Insurer and receive nonpublic personal, financial or health information, with respect to any applicant or insured of the Insurer, for use or disclosure during the service performance, are prohibited from disclosing or using such information for any reason other than to carry out the business purposes for which the information was disclosed.

## Relationship of the Parties

In regards to this Section of the policy, the relationship between the parties shall be that of independent contractors. The parties further acknowledge that the policyholder is not our agent and shall not hold itself out as such and that the policyholder acts solely on behalf of its employees in the performance of its obligations under this Section of the policy.

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 21 of 59   PageID #: 25



**USAble Life**                              P.O. Box 1650 • Little Rock, AR 72203-1650

---

## NOTICE OF CHANGE

|  |  |
|---|---|
| Group Number: | **50000515-LTD** |
| Policyholder: | **City of Pigeon Forge** |
| Effective Date of Change: | **July 1, 2011** |

**Your Long Term Disability Certificate is hereby amended as follows:**

The Renewal Date is changed to: July 1, 2012

This Notice of Change is part of the certificate to which it is attached.

Signed for USAble Life at Little Rock, Arkansas, as of the Effective Date of Change.

**USAble Life**

President

Notice to LTD-C (5-09)

---

USAble Life • P.O. Box 1650 • Little Rock, AR 72203-1650



320 W. Capitol • P.O. Box 1650 • Little Rock, AR 72203-1650
(501) 375-7200 • (800) 648-0271

# GROUP LONG TERM DISABILITY
# CERTIFICATE OF INSURANCE

**Policyholder:** CITY OF PIGEON FORGE

**Class:** 0001 – ALL FULL TIME ACTIVE EMPLOYEES

**State of Residence:** TENNESSEE

This is to certify that USAble Life has issued and delivered The Group Long Term Disability Insurance Policy to the Policyholder.

The policy insures the employees of the policyholder who:
1. are eligible for the insurance;
2. become insured; and
3. continue to be insured;
according to the terms of the policy.

The terms of the policy that affect your insurance are contained in the following pages.

This Certificate of Insurance is a part of the policy. This certificate replaces any other that USAble Life may have issued to the policyholder to give to you under the Group Insurance Policy specified herein.

Signed for USAble Life:

Secretary                    President

LTD-C (5-09)                              1

# Table of Contents

|  | Page |
|---|---|
| Schedule of Insurance | 4 |
| Section 1 – Definitions | 6 |
| Section 2 – Eligibility and Effective Date Provisions | 12 |
| Eligible Employee | 12 |
| Eligibility Date | 12 |
| Effective Date of Insurance | 12 |
| Delayed Effective Date | 12 |
| Section 3 – Changes In Coverage Provisions | 13 |
| When Coverage Amounts Change (Redetermination Date) | 13 |
| Delayed Effective Date of Change | 13 |
| Changes to the Policy | 13 |
| Section 4 – Termination Provisions | 14 |
| When a Person's Insurance Ends | 14 |
| Continuation of Insurance | 14 |
| Section 5 – Claim Provisions | 15 |
| Payment of Benefits | 15 |
| To Whom Payable | 15 |
| Authority | 15 |
| Filing a Claim | 15 |
| Proof of Loss | 15 |
| Right to Examine or Interview | 16 |
| Right of Reimbursement | 16 |
| Alternate Dispute Resolution Procedures | 17 |
| Description of the Procedure | 17 |
| Binding Arbitration | 18 |
| Section 6 – General Provisions | 20 |
| Entire Contract | 20 |
| Errors | 20 |
| Misstatements | 20 |
| Incontestability | 20 |
| Agency | 20 |
| Unpaid Premium | 20 |
| Refund of Premium | 21 |
| Conformity with State Statutes | 21 |
| Fraud | 21 |
| Section 7 – Long Term Disability Benefits | 22 |
| Insurance Provided | 22 |
| Monthly Benefit Calculation | 22 |
| Eligible Offsets | 22 |
| Estimate of Benefits or Other Amounts | 24 |
| Social Security Assistance | 24 |
| Adjustment of Benefits | 24 |
| Lump Sum Benefit | 25 |
| Benefit Freeze | 25 |
| Waiver of Premium Benefit | 25 |
| Managed Rehabilitation | 25 |
| Survivor Benefit | 26 |
| Termination of Benefit Payments | 26 |

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 24 of 59   PageID #: 28

Extension of Benefit Payments................................................................................27

**Section 8 – Limitations and Exclusions**..................................................................**28**
 Alcoholism, Drug Addiction, Chemical Dependency, and Mental Illness Limitation................ 28
 Pre-Existing Condition Exclusion..............................................................................28
 Exclusions........................................................................................................28

**Section 9 – Continuity of Coverage**.......................................................................**30**
 Definitions..........................................................................................................30
 Continuity of Coverage........................................................................................ 30
 Prior Plan Credit for Long Term Disability Insurance...................................................30

**Important Notice**................................................................................................**32**

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 25 of 59   PageID #: 29

# Schedule of Insurance

| | |
|---|---|
| **Policyholder:** | CITY OF PIGEON FORGE |
| **Group Policy Number:** | 50000515-LTD |
| **Policy Effective Date:** | May 1, 2010*<br>*This certificate replaces any certificate issued before the date shown. |

**Contributions:**
You do not contribute toward the cost of the Plan.

| | |
|---|---|
| **Eligible Class:** | Class 0001 - ALL FULL TIME ACTIVE EMPLOYEES |
| **Renewal Date:** | July 1, 2013 |

**Waiting Period:** You will be eligible for coverage on the first of the policy month following completion of the following period of continuous active work:
1. If you are working for the employer on the policy effective date – 0 days
2. If you start working for the employer after the policy effective date – 0 days

| | |
|---|---|
| **Full-time Employment:** | 30 hours weekly |
| **Elimination Period:** | 90 days |
| **Benefit Percentage:** | 60% |

**Maximum Monthly Benefit:** $5,000

**Guaranteed Issue Maximum Monthly Benefit:** $5,000. Amounts over this will be subject to Evidence of Insurability.

**Minimum Monthly Benefit:** $100.

**Maximum Interruption During Elimination Period:** 14 days
This Maximum applies to all returns to active work during any one elimination period.

**Maximum Benefit Period**
We will not pay benefits beyond the maximum benefit period stated below, based on the person's age on the day the period of disability started.

| AGE | MAXIMUM BENEFIT PERIOD |
|---|---|
| Less Than 60 | To normal retirement age |
| 60 | 60 months or normal retirement age,* whichever is longer |
| 61 | 48 months or normal retirement age,* whichever is longer |
| 62 | 42 months or normal retirement age,* whichever is longer |
| 63 | 36 months or normal retirement age,* whichever is longer |
| 64 | 30 months or normal retirement age,* whichever is longer |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 or over | 12 months |

LTD-C (5-09)                                         4

\***Normal Retirement Age** means the Social Security Normal Retirement Age as stated in the 1983 revision of the United States Social Security Act. It is determined by your date of birth as follows:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 or before | 65 |
| 1938 | 65 + 2 months |
| 1939 | 65 + 4 months |
| 1940 | 65 + 6 months |
| 1941 | 65 + 8 months |
| 1942 | 65 + 10 months |
| 1943 through 1954 | 66 |
| 1955 | 66 + 2 months |
| 1956 | 66 + 4 months |
| 1957 | 66 + 6 months |
| 1958 | 66 + 8 months |
| 1959 | 66 + 10 months |
| 1960 or after | 67 |

**Additional Riders Included:**

Cost of Living Adjustment Rider: 3% per year for 5 years

Medical and COBRA Premium Rider: $500 per month

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 27 of 59   PageID #: 31

# Section 1 – Definitions

The terms listed, if used, will have these meanings.

**Accommodation Expense** means the costs your employer incurs to accommodate your disability, as required by the Americans with Disabilities Act or similar legislation. It also means costs you incur for tools, equipment, furniture, computer software, or other items necessary for you to return to work. The amount of the accommodation expense will be limited to $3,000 for each period of disability.

**Active Work or Actively at Work** mean the expenditure of time and energy for the policyholder or an associated company at your usual place of business on a full-time basis. If you are not working on a day your coverage would otherwise take effect, you will be considered to be at active work on that day only if:

1. when that workday begins, it would be reasonable to expect that you would be physically and mentally able to complete a full-time week of work in your regular occupation; and
2. you are not disabled; and
3. your contract of employment, if applicable, remains active; and
4. you are not on an unapproved, administrative or disciplinary leave; and
5. you return to work at the end of a paid break or vacation period.

**Associated Company** means any company shown in the application which is owned by or affiliated with the policyholder.

**Basic Monthly Earnings** means your regular monthly rate of pay from the employer just prior to the date you become disabled:

1. including contributions you make through a salary reduction agreement with the employer to:
    a. an Internal Revenue Code (IRC) Section 401(k), 403(b) or 457 deferred compensation arrangement;
    b. an executive non qualified deferred compensation arrangement;
    c. a salary reduction arrangement under an IRC Section 125 plan;
2. including commissions;
3. not including:
    a. expense reimbursements;
    b. overtime pay; or
    c. bonuses;

for the same period as above.

**Commissions** means the monthly average of commissions paid to you by the policyholder or associated company over the 2 calendar year(s) ending just prior to the date you become disabled, or over the number of calendar months of employment if less than this period.

**Contributory** means you pay part of the premium.

**Covered Person** means an eligible person who is also an eligible employee or member of the policyholder, or an associated company who has become insured for coverage. Covered persons do not include contract, temporary, seasonal, or part-time workers.

**Date of Disability** means the first day that you are under the regular care of a physician and meet the definition of disability as defined below.

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 28 of 59   PageID #: 32

**Disability or Disabled** means you satisfy either the Occupation Test or the Earnings Test as described below. You need only satisfy one Test to be considered disabled.

Occupation Test

1. During the elimination period and the first 24 months of a period of disability, an injury, sickness, or pregnancy requires that you be under the regular care of a physician, and prevents you from performing at least one of the material duties of your regular occupation with reasonable accommodations; and

2. After 24 months of disability payments, an injury, sickness, or pregnancy prevents you from performing at least one of the material duties of any gainful occupation with reasonable accommodations for which your education, training, and experience qualifies you.

If, during the elimination period and the first 24 months of a period of disability, you can perform the material duties of your regular occupation with reasonable accommodation(s), you will not be considered disabled. If, after 24 months of a period of disability, you can perform any gainful occupation for which your education, training, and experience qualifies you, with reasonable accommodation(s), you will not be considered disabled. The inability to perform a material duty because of the discontinuation of reasonable accommodation(s) on the part of the employer does not, in itself, constitute disability.

Earnings Test

1. During the elimination period and the first 24 months of a period of disability, you may be considered disabled in any month in which you are actually working, if an injury, sickness, or pregnancy prevents you from being capable of earning more than 80% of your indexed pre-disability earnings in that month. On each anniversary of the date your disability started, we will use your indexed pre-disability earnings to decide whether you are disabled under this test. Any month in which you are capable of earning more than 80% of your indexed pre-disability earnings, you will not be considered disabled under the Earnings Test even if your actual earnings in that month are less than 80% of your indexed pre-disability earnings.

2. After 24 months of disability payments, you may be considered disabled in any month in which you are actually working, if an injury, sickness, or pregnancy prevents you from being capable of earning more than 60% of your indexed pre-disability earnings in that month in any occupation for which your education, training or experience qualifies you. On each anniversary of the date your disability started, we will use your indexed pre-disability earnings to decide whether you are disabled under this test. Any month in which you are capable of earning more than 60% of your indexed pre-disability earnings, you will not be considered disabled under the Earnings Test even if your actual earnings in that month are less than 60% of your indexed pre-disability earnings.

If your actual earnings during any month are more than the percentage noted above, you will not be considered disabled under the Earnings Test during that month. In making this determination, salary, wages, partnership or proprietorship draw, commissions, bonuses, or similar pay, and any other income you receive or are entitled to receive will be included. Any lump sum payment will be pro-rated, based on the time over which it accrued or the period for which it was paid.

**Education Expense** means, in your rehabilitation plan, the costs you incur which are required for your education or training to return to work.

**Eligible Class** means a class of persons eligible for insurance under the policy. This class is based on employment or membership in a group.

LTD-C (5-09)                                   7

**Eligible Person** means a person who:
1. is a citizen of the United States of America (U.S.) or Canada, who either:
   a. resides in the U.S. or Canada; or
   b. is stationed outside the U.S. or Canada for a period of less than 6 months; or
2. is a foreign national residing in the U.S. and meets all of the following requirements:
   a. has a valid permanent residency visa;
   b. participates in U.S. Social Security; and
   c. is covered by Workers' Compensation.

**Elimination Period** means the number of days during a period of disability that must pass before benefits are payable. No benefits are payable for the Elimination Period. You cannot satisfy any part of the elimination period with any period of non-covered disability. The elimination period is shown on the Schedule of Insurance and begins on the first day of your disability.

If you return to active work during the elimination period for no more than the number of days in the Maximum Interruption During Elimination Period shown in the Schedule of Insurance, you will not have to satisfy that part of the elimination period already fulfilled if you:
1. remain insured under the policy; and
2. become disabled by the Occupation Test or the Earnings Test again for the same cause or one related to it.

**Evidence of Insurability** means a signed health and medical history form provided by us, a medical examination, if requested, and any additional information and attending physicians' statements that we may require.

**Family Member** means a person who is a parent, spouse, child, sibling, domestic partner, grandparent, grandchild, step-child, step-parent, step-sister, step-brother, father-in-law, or mother-in-law of the covered person; or spouses, as applicable, of any of these.

**Full-time** means working at least the number of hours indicated in the Schedule of Insurance for Full-time employment.

**Gainful Occupation** means any employment that you may be suited for based on your education, training, and experience, that will provide you with an income when you return to work that exceeds:
1. 60% of your indexed pre-disability earnings, if you are working;
2. 60% of your indexed pre-disability earnings, if you are not working.

**Government Plan** means the United States Social Security Act, the Railroad Retirement Act, the Canadian Pension Plan, similar plans provided under the laws of other nations, and any plan provided under the laws of a state, province, or other political subdivision. It also includes any public employee retirement plan or any teachers' employment retirement plan, or any plan provided as an alternative to any of the above acts or plans. It does not include any Workers' Compensation Act or similar law, or the Maritime Doctrine of Maintenance, Wages, or Cure.

**Home Office** means the principal office of USAble Life in Little Rock, Arkansas.

**Hospital** means a facility supervised by one or more physicians which is licensed and operated under state and local laws. It must have 24-hour nursing service by registered graduate nurses. It may specialize in treating alcoholism, drug addiction, chemical dependency, or mental disease, but it cannot be a rest home, convalescent home, or a home for the aged.

**Hospital Confined and Hospital Confinement** means staying in a hospital as a registered inpatient for 24 hours a day.

**Indexed Pre-disability Earnings** means your pre-disability earnings increased by % on each anniversary of the date your disability started.

**Injury** means accidental bodily injury. It does not mean intentionally self-inflicted injury while sane or insane.

**Intoxicated** means that you were under the influence of alcohol as determined by the laws of the jurisdiction in which the accident occurred. Conviction is not necessary for a determination of being intoxicated.

**Long Term Disability Insurance** means the group long term disability insurance provided under the policy.

**Material Duty or Material Duties** mean the sets of tasks or skills required generally by employers from those engaged in an occupation. We will consider one material duty of your regular occupation to be the ability to work for an employer on a full-time basis as defined in the policy.

**Medical Expense** means the reasonable costs you incur for medical treatment, physical therapy, and adaptive equipment necessary for your vocational rehabilitation, in excess of amounts paid or payable by third parties and any amounts under a policy of major medical coverage.

**Mental Illness** means a mental disorder as listed in the current edition of the Diagnostic and Statistical Manual of Mental Disorders, as published by the American Psychiatric Association. A mental illness, as so defined, may be related to or be caused by physical or biological factors, or result in physical symptoms or expressions. For the purposes of the policy, mental illness does not include any mental disorder listed within any of the following categories found in the Diagnostic and Statistical Manual of Mental Disorders, as published by the American Psychiatric Association:

1. mental retardation;
2. motor skills disorder;
3. pervasive developmental disorders;
4. delirium, dementia, and amnestic and other cognitive disorders;
5. schizophrenia; and
6. narcolepsy, obstructive sleep apnea, and sleep disorder due to a general medical condition.

**Moving Expense** means the costs you incur to move more than 100 miles so that you can attend school or accept gainful work.

**No-fault Motor Vehicle Coverage** means a motor vehicle plan that pays disability or medical benefits without considering who was at fault in any accident that occurs.

**Noncontributory** means the policyholder pays the premium.

**Occupation** means a group of jobs:

1. in which a common set of tasks is performed; or
2. which are related in terms of similar objectives and methodologies, and which may be related in terms of materials, products, worker actions, or worker characteristics.

**Other Disability Plan** means any group disability plan sponsored by your employer, the policyholder, or an associated company, except the one provided under the policy.

**Participation in a riot** shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in your own defense, if such actions of defense are not

LTD-C (5-09)                                    9

taken against persons seeking to maintain or restore law and order including but not limited to police officers and firemen.

**Period of Disability** means the time that begins on the day you become disabled and ends on the day before you return to active work. If you satisfy the elimination period and then return to active work, become disabled again, and remain insured under the policy; the same period of disability may continue. Your return to active work must be for less than:

1. 6 months, if the later disability results from the same cause, or a related one; or
2. 1 day, if the later disability results from a different cause.

If your return to active work meets either of the above conditions, you do not have to satisfy the elimination period again. The Maximum Benefit Period will continue on the day you become disabled again.

If you return to active work for more than the time shown above, and then become disabled again, you will start a new period of disability. You must satisfy the elimination period again and the Maximum Benefit Period will start over.

**Physician** means a person acting within the scope of his or her license to practice medicine, prescribe drugs or perform surgery. Also, a person whom we are required to recognize as a physician by the laws or regulations of the governing jurisdiction, or a person who is legally licensed to practice psychiatry, psychology or psychotherapy and whose primary work activities involve the care of patients, is a physician. However, neither you nor a family member will be considered a physician.

**Plan** means the policy and certificates of insurance provided for covered persons.

**Plan Administrator** means the employer that sponsors the plan for the benefit of its employees and eligible dependents.

**Policy** means the group policy issued by us to the policyholder that describes the benefits for which you may be eligible.

**Policyholder** means the entity to which the policy is issued.

**Pre-disability Earnings** means your Basic Monthly Earnings in effect on the day before you became disabled.

**Reasonable Accommodation(s)** means any modification(s) to the worksite, the job or employment practices, which would allow you to perform the material duties of the occupation and which would not create an undue hardship for the employer.

**Regular Care** means you personally visit a physician as often as is medically required to effectively manage and treat your disabling condition(s), according to generally accepted medical standards; and you are receiving appropriate treatment and care, according to generally accepted medical standards. Treatment and care for the sickness or injury causing your disability must be given by a physician whose specialty or experience is appropriate.

**Regular Occupation** means the occupation in which you were working immediately prior to becoming disabled.

**Rehabilitation Plan** means a written statement, developed by us, which describes:

1. the vocational rehabilitation goals for you;
2. our responsibilities, your responsibilities, and the responsibilities of any other parties to the plan;
3. the timing of the implementation and expected completion of the plan, to the extent that it can be established, assuming your full cooperation; and
4. the costs of the rehabilitation services.

LTD-C (5-09)                                   10

The rehabilitation plan will be designed to enable you to return to work in a gainful occupation.

**Retirement Plan** means a formal or informal retirement plan, whether or not under an insurance or annuity contract. It also means any public employee retirement plan, or teachers' employment retirement plan provided as an alternative to rather than a supplement for such plans.

It does not include:

1. a plan you pay for entirely;
2. a qualified profit-sharing plan;
3. a thrift plan;
4. an individual retirement account (IRA);
5. a tax sheltered annuity (TSA);
6. a stock ownership plan;
7. a government plan; or
8. a plan that qualifies under Internal Revenue Service Code 401(k).

**Riot** shall include all forms of public violence, disorder, or disturbance of the public peace, by three or more persons assembled together; whether or not acting with common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

**Sickness** means a disease or illness, including pregnancy.

**Social Security** plan means:

1. the United States Social Security Act;
2. the Railroad Retirement Act;
3. the Canadian Pension Plan; or
4. any similar plan provided under the laws of any other nation.

**United States of America** means the fifty (50) states of the United States and the District of Columbia. It does not include territories of the United States.

**Waiting Period** is the number of continuous days of service during which you must be an active, full-time employee in a class eligible for insurance before you become eligible for coverage.

**War** means declared or undeclared war or a conflict involving the armed forces of any country, group of countries, governments, or international organization.

**We, Us, and Our** mean USAble Life.

**You and Your** mean an employee or member of the policyholder or an associated company who has met all the eligibility requirements for coverage.

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 33 of 59   PageID #: 37

## Section 2 – Eligibility and Effective Date Provisions

**Eligible Employee**

If you are working on a full-time basis for the employer, you are eligible for insurance after completion of the required waiting period, provided you are in a class of employees who are included.

**Eligibility Date**

If you are working for your employer, the date you are eligible for coverage is the latest of the following dates:

1. the policy effective date;
2. the day after you complete any waiting period shown in the Schedule of Insurance by continuous service with the employer, the policyholder, or an associated company;
3. the date the policy is changed to include your class; or
4. the date you become a member of a class eligible for insurance.

**Effective Date of Insurance**

You must use forms provided by us when applying for insurance.

For Benefit Amounts Not Requiring Evidence of Insurability:

1. When your Employer pays 100% of the cost of your coverage under the policy (non-contributory), you will be covered on your eligibility date.
2. When you and your Employer share the cost of your coverage under the policy or when you pay 100% of the cost yourself (contributory), you will be covered on the latest of the following dates:
   a. on your eligibility date, if you enroll for insurance within 31 days after the date you first become eligible for coverage; or
   b. on the first day of the policy month following the date we approve your application if you do not apply for insurance within 31 days after your eligibility date.

For Benefit Amounts Requiring Satisfactory Evidence of Insurability, your coverage will be effective on the first day of the policy month following the date we approve your application.

**Delayed Effective Date**

If you are not actively at work on the date your insurance or any increase in insurance is scheduled to take effect, it will take effect on the day you return to active work. If your insurance is scheduled to take effect on a non-working day, your active work status will be based on the last working day before the scheduled effective date of your insurance.

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 34 of 59   PageID #: 38

## Section 3 – Changes In Coverage Provisions

**When Coverage Amounts Change (Redetermination Date)**
The policy redetermines your Basic Monthly Earnings on the first day of the policy month after a change occurs. The policyholder must report updates to all covered person's earnings as they occur. Changes to a covered person's earnings are subject to any proof of insurability requirements of the policy. As of the policy's redetermination date, we use a covered person's Basic Monthly Earnings on record with us to: (a) set rates; (b) set benefit amounts and limits; and (c) calculate premium payable under the policy.

**Delayed Effective Date of Change**
You must be actively at work on a full-time basis on the redetermination date. If you are not, your coverage amount will not change until the date you return to active work on a full-time basis. Changes in earnings will not apply to a recurring disability.

Any decrease in coverage will take effect immediately but will not affect a payable claim that occurs prior to the decrease.

**Changes to the Policy**
Any increase or decrease in coverage because of a change in the plan of insurance will become effective on the date of the change. The following limitations will apply to an increase:
1. the Delayed Effective Date provision; and
2. the Pre-existing Condition Exclusion.

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 35 of 59   PageID #: 39

## Section 4 – Termination Provisions

### When a Person's Insurance Ends
A covered person's insurance will end on the date:
1. the policy ends;
2. the policy is changed to end the insurance for a person's eligible class;
3. a person is no longer in an eligible class;
4. a person stops active work; or
5. a required contribution was not paid.

### Continuation of Insurance
If a person is unable to perform active work for a reason shown below, the policyholder may continue the person's insurance on a premium-paying basis provided the person remains in other respects a member of an eligible class. The continuation cannot be more than the maximum continuation shown below. The employer must act so as not to discriminate unfairly among employees in similar situations.

The maximum continuation for long term disability insurance is the longest applicable period described below:
1. the end of the calendar month following the month active work stopped, due to temporary lay-off or approved leave of absence; or
2. the end of the period the policyholder is required to allow after the last day of active work due to family or medical leave of absence under:
   a. the federal Family and Medical Leave Act; or
   b. any similar state law.

Any leave of absence, including a family or medical leave of absence described above, must be approved in advance in writing by the policyholder if the person's insurance is to be continued.

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 36 of 59   PageID #: 40

## Section 5 – Claim Provisions

**Payment of Benefits**
We will pay benefits at the end of each month (or shorter period) for which we are liable, after we receive the required proof. If any amount is unpaid when disability ends, we will pay it when we receive the required proof.

**To Whom Payable**
We will pay all benefits to you. However, if we receive proof that a legal guardian or conservator has been appointed, we will pay benefits to such guardian or conservator. If any amount remains unpaid when you die, we will pay at our discretion, to one of the following classes of survivors: (1) your spouse; (2) your surviving children in equal shares; (3) your mother and/or father; (4) your brother and/or sister; or (5) your estate.

**Authority**
The policyholder delegates to us and agrees that we have the discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the policy.

We decide: (a) if a covered person is eligible for this insurance; (b) if a covered person meets the requirements for benefits to be paid; and (c) what benefits are to be paid by the policy. We also interpret how the policy is to be administered. What we pay and the terms for payment are explained in this certificate.

**Filing a Claim**
1. You must send us notice of the claim. We must have written notice of any insured loss within 30 days after it occurs, or as soon as reasonably possible. You can send the notice to our Home Office. We need enough information to identify you as a covered person.
2. Within 15 days after the date of your notice, we will send you certain claim forms. The forms must be completed and sent to our Home Office. If you do not receive the claim forms within 15 days, we will accept a written description of the exact nature and extent of the loss.
3. The time limit for filing a claim, by submission of a completed claim form, is 90 days after the end of the first month (or shorter period) for which we are liable.
4. To decide our liability, we may require:
   a. proof of benefits from other sources, and
   b. proof that you have applied for all benefits from other sources, and that you have furnished any proof required to get them.

**Proof of Loss**
You must give us proof of claim no later than 90 days after the end of the elimination period.

Failure to furnish such proof within such time shall not invalidate nor reduce your claim if it was not reasonably possible to furnish such proof within such time. Such proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time proof is otherwise required.

You must give us proof of continued disability and regular attendance of a physician within 30 days of the date we request the proof.

The proof must cover:
1. the date disability started;
2. the cause of disability; and

LTD-C (5-09)                                   15

3. the degree of disability.

You must provide us with all of the information we specify as necessary to determine proof of loss and decide our liability. This may include but is not limited to: medical records; hospital records; pharmacy records; test results; therapy and office notes; mental health progress notes; medical exams and consultations; tax returns; business records; Workers' Compensation records; payroll and attendance records; job descriptions; Social Security award and denial notices; and Social Security earnings records.

You must provide us with a written authorization allowing the sources of medical, vocational, occupational, financial, and governmental information to release documents to us which enables us to decide our liability. If you do not provide us with continuing proof of disability and the items and authorization necessary to allow us to determine our liability, we will not pay benefits.

### Right to Examine or Interview
We may ask you to be examined as often as we require at any time we choose. We may require you to be interviewed by our authorized representative. We will pay third party charges for any independent medical exam or interview which we require. If you fail to attend or fully participate, we will not pay your benefits.

### Right of Reimbursement
The plan shall have right to reimbursement of any long term disability benefits that you receive from the plan for illness or injury caused by a third party. You agree to reimburse the plan 100% for any and all benefits provided through the plan from any and all amounts recovered by or on your behalf from or on behalf of the responsible third party through mediation, arbitration, judgment, suit, or other action (an "Action"), or settlement from your own insurance and/or from the third party (or their insurance) (a "Settlement").

The plan may notify those parties of its right of reimbursement without notice to or consent from any covered person.

This priority right of reimbursement will not be reduced by attorney fees and costs you incur.

The plan may enforce its rights of subrogation and recovery against, without limitation, any tortfeasors, other responsible third parties or against available disability insurance coverages. Such actions may be based in tort, contract or other cause of action to the fullest extent permitted by law.

#### Notice and Cooperation
You are required to notify us promptly if you initiate an Action against and/or are offered a Settlement by a responsible third party for illness or injuries caused by the third party after receiving benefits from the plan for such illness or injury to enable us to protect the plan's rights under this section. You are also required to cooperate with us and to execute any documents that we deem necessary to protect the plan's rights under this section.

You shall not do anything to hinder, delay, impede or jeopardize the plan's right of reimbursement. Failure to cooperate or to comply with this provision shall entitle the plan to withhold any and all benefits due you under the plan. This is in addition to any and all other rights that the plan has pursuant to the provisions of the plan's right of reimbursement.

#### Right of Reimbursement
If a covered person settles any claim or action against any third party without our consent, that covered person shall be deemed to have been made whole by the settlement and the plan shall be entitled to collect the present value of its rights from the settlement fund immediately. The covered person shall hold any such proceeds of settlement or judgment in trust for the benefit of

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 38 of 59   PageID #: 42

the plan. If the plan has to file suit, or otherwise litigate to enforce its right of reimbursement or collect the proceeds of a settlement or judgment, you are responsible for paying any and all costs, including attorneys' fees, the plan incurs in addition to the amounts it is entitled to recover through its right of reimbursement.

## Alternate Dispute Resolution Procedures

This dispute resolution procedure ("procedure") is intended to provide a fair, quick and inexpensive method of resolving any and all disputes with us. Such disputes include any matters that cause you to be dissatisfied with any aspect of your relationship with us, including any claim, controversy, or potential cause of action you may have against us. Please contact the Dispute Resolution office at (800) 648-0271 if you have any questions about this section of the certificate or to begin the dispute resolution process.

The following terms are applicable to all disputes:
1. This procedure is the exclusive method of resolving any disputes.
2. The procedure can only resolve disputes that are subject to our control.
3. This procedure will be governed by the Employee Retirement Income Security Act of 1974 ("ERISA"); Rules and Regulations for Administration and Enforcement; Claims Procedure (the "Claims Regulation"). That includes the definition of an adverse benefit determination, which is defined as any denial, reduction, termination or failure to provide or make payment for what you believe should be a covered benefit.
4. You may request a form from our Dispute Resolution office to authorize another person to act on your behalf concerning a dispute.
5. We may elect to skip one or more of the steps of this procedure if it is determined that step will not help to resolve the dispute.
6. Any dispute will be resolved in accordance with the terms of this certificate, applicable state or Federal laws and regulations.
7. You must begin the dispute process within 180 days from the date you receive notice of an adverse benefit determination. If you do not initiate the dispute process within that 180 day period, you give up the right to take any action based on that Dispute.
8. No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty (60) days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three (3) years after the time written proof of loss is required to be furnished.

## Description of the Procedure

### Inquiry

You should contact our Dispute Resolution office to discuss and attempt to resolve any issues regarding a dispute. We hope that this informal process will resolve your questions or concerns.

### Appeals

If you are not satisfied with the response to your inquiry, you may submit a written request (an "appeal") to the Office of the Appeals Coordinator, USAble Life, P.O. Box 1650, Little Rock AR 72203-1650, asking that we reconsider an adverse benefit determination. Please contact the Dispute Resolution office if you have any questions about how to submit an appeal to us. You are not required to use a specific form, but you may request that the Dispute Resolution office send you a blank appeal form to ensure that you provide the information that will be needed to review your appeal.

We will assign a coordinator to review your appeal. The appeal coordinator is an individual with appropriate expertise who is neither the individual who made the adverse benefit determination, nor a subordinate of that individual.

LTD-C (5-09)                                    17

The appeal coordinator may request that you submit additional information concerning your grievance. The appeal coordinator will also consider information submitted by others, including information requested from other USAble Life representatives. The appeal coordinator will have full discretionary authority to make eligibility, benefit or claim determinations and construe the terms of the policy. Such determinations shall be subject to the review standards applicable to ERISA plans, even if the policy is not governed by ERISA.

- We will make a decision within 60 days after receiving your appeal concerning a claim determination.

The appeal coordinator will send you a written decision concerning your appeal. The appeal coordinator's decision will include: a statement of the coordinator's understanding of your appeal; a statement explaining the basis of the decision; and a list of the documents or information upon which that decision was based. We will send you a copy of the listed documents, without charge, if you make a written request for such documents.

**Binding Arbitration**

If you are still not satisfied after completing the appeal procedure, you have the right to bring a civil action against us to obtain the remedies available pursuant to Sec. 502(a) of ERISA (an "ERISA Action") after completing the mandatory appeal process. Those ERISA remedies will apply to this policy even if your plan is not otherwise governed by ERISA. No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty (60) days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three (3) years after the time written proof of loss is required to be furnished.

You may request that the dispute be submitted for resolution by binding arbitration. That arbitration request must be submitted, in writing, to USAble Life's General Counsel within sixty (60) days after you receive the appeal coordinator's decision.

The dispute will be submitted to arbitration in accordance with the rules of the American Arbitration Association, unless we both agree to use an alternative dispute resolution administrator or procedure. The arbitration will be conducted before three (3) arbitrators appointed in accordance with the administrator's rules, unless we both agree to use a single arbitrator. We will pay the filing fee charged by the administrator and the arbitrator. You will be solely responsible for any other costs that you incur to participate in the arbitration process, including your attorney's fees, witness expenses and travel costs, if any. The filing fee and arbitrator's fees may be reallocated as part of an arbitration award, in whole or in part, at the discretion of the arbitrator.

The administrator or arbitrator(s), if appointed, shall have the discretion to decide where the arbitration will be conducted, provided it shall be conducted in Tennessee at a location where it is reasonably convenient for you to participate.

The arbitrator: (a) shall consider the dispute individually and shall not certify or consider multiple disputes as part of a class action; (b) shall be required to issue a reasoned written decision explaining the basis of his or her decision and the manner of calculating any award; (c) may not vary or disregard the terms of the policy; and (d) shall be bound by controlling law when issuing a decision concerning the dispute.

The arbitrator shall limit discovery to the extent possible consistent with the objective of completing the arbitration in a fair, prompt, and cost effective manner. Emergency relief such as injunctive relief may be awarded by the arbitrator. The arbitrators' award, order or judgment shall be final and binding upon the parties. That decision may be entered and enforced in any

state or federal court of competent jurisdiction. That arbitration award may only be modified, corrected, or vacated for the reasons set forth in the United States Arbitration Act (9 USC § 1).

**Contact Information**
General Counsel
USAble Life
P.O. Box 1650
Little Rock, AR 72203-1650
Telephone: (800) 648-0271
Email: AppealCoordinator@usablelife.com

Office of the Dispute Resolution Coordinator
USAble Life
P.O. Box 1650
Little Rock, AR 72203-1650
Telephone: (800) 648-0271
Email: AppealCoordinator@usablelife.com

Office of the Appeal Coordinator
USAble Life
P.O. Box 1650
Little Rock, AR 72203-1650
Telephone: (800) 648-0271
Email: AppealCoordinator@usablelife.com

LTD-C (5-09)                                    19

## Section 6 – General Provisions

**Entire Contract**
This certificate is furnished in accordance with and subject to the terms of the policy. The entire contract consists of the policy, which includes the application, and any attached papers; and this certificate, your enrollment form, if required, and any riders or endorsements. No change in the policy will be effective until approved by one of our officers. This approval can only be in writing and must be noted on or attached to the policy. No agent has authority to change the policy or certificate or to waive any of their provisions.

Any statement made by you or the policyholder is considered a representation. It is not considered a warranty or guarantee. A statement will not be used in a dispute unless it is written and signed, and a copy is given to you.

**Errors**
An error in keeping records will not cancel insurance that should continue nor continue insurance that should end. We will adjust the premium, if necessary. If the premium was overpaid, we will refund the difference. If the premium was underpaid, the difference must be paid to us.

**Misstatements**
If any information about you or the policyholder's plan is misstated or altered after the application is submitted, including information with respect to participation or who pays the premium and under what circumstances, the facts will determine whether insurance is in effect and in what amount. We will retroactively adjust the premium.

**Incontestability**
Unless the premiums have not been paid, the validity of the policy cannot be contested after it has been in force for two years.

Any statement made by the policyholder or a covered person will be considered a representation. It is not considered a warranty or guarantee. A statement will not be used in a dispute unless it is written and signed, and a copy is given to the covered person or the beneficiary.

No statement, except fraudulent misstatement, made by a covered person about insurability will be used to deny a claim for a loss incurred or disability starting after coverage has been in effect for two years.

No claim for loss starting two or more years after the covered person's effective date may be reduced or denied because a disease or physical condition existed before the person's effective date, unless the condition was specifically excluded by a provision in effect on the date of loss.

**Agency**
Neither the policyholder, any employer, any associated company, nor any administrator appointed by the foregoing is our agent. We are not liable for any of their acts or omissions.

**Unpaid Premium**
We may deduct any unpaid premium then due from the payment of a claim under this certificate.

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 42 of 59   PageID #: 46

### Refund of Premium

On the death of the covered person, proceeds payable hereunder shall include the amount of unearned premium paid beyond the end of the policy month in which death occurred. Payment shall be made in one lump sum no later than 30 days after proof of the covered person's death has been furnished to us.

### Conformity with State Statutes

If the provisions of this certificate do not conform with the laws of the state in which you reside on the certificate effective date, they are hereby amended to conform with the minimum requirements of the statutes of that state.

### Fraud

It is unlawful to knowingly provide false, incomplete or misleading facts or information with the intent of defrauding us. An application for insurance or statement of claim containing any materially false or misleading information may lead to reduction, denial or termination of benefits or coverage under the policy and recovery of any amounts we have paid.

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 43 of 59   PageID #: 47

# Section 7 – Long Term Disability Benefits

## Insurance Provided

If you become disabled while insured under the policy, we will pay long term disability insurance benefits after you satisfy the elimination period. We will continue to pay benefits during your disability but not beyond the Maximum Benefit Period. Any benefits are subject to the provisions of the policy.

## Monthly Benefit Calculation

Your monthly benefit is your pre-disability earnings multiplied by the Benefit Percentage, subject to the Maximum Monthly Benefit, minus the Eligible Offsets.

However, if you are disabled and working and your disability earnings are at least 20% but less than 80% of your indexed pre-disability earnings, the following calculation will be used to determine if your benefits will be further reduced:

During the first 12 months benefits are paid while you are working, your monthly benefit payment will not be reduced as long as your disability earnings, including all Eligible Offsets, plus your monthly benefit do not exceed 100% of your indexed pre-disability earnings.

1. Add your monthly disability earnings and the amount of all Eligible Offsets to your monthly benefit.
2. Compare the answer in item 1 to your indexed pre-disability earnings.

If the answer from item 1 is less than or equal to 100% of your indexed pre-disability earnings, we will not further reduce your monthly benefit.

If the answer from item 1 is more than 100% of your indexed pre-disability earnings, we will subtract the amount over 100% from your monthly benefit.

After 12 months of benefit payments while you are working, you will receive payments based on the percentage of income you are losing due to disability as follows:

1. Subtract your disability earnings from your indexed pre-disability earnings.
2. Divide the answer from item 1 by your indexed pre-disability earnings. This is your percentage of lost earnings.
3. Multiply your monthly benefit by the answer in item 2.

This is the amount we will pay you each month.

If you are disabled and working, and your disability earnings are more than 80% of your monthly earnings prior to disability, no benefit will be payable.

## If Your Disability Earnings Fluctuate

If your disability earnings fluctuate from month to month, we may average your disability earnings over the most recent three months to determine if your claim should continue.

If we average your disability earnings, we will not terminate your claim unless the average of your disability earnings from the last three months exceeds 80% of your pre-disability earnings.

**Minimum Monthly Benefit:** If you are eligible for a benefit under the policy, we will never pay less than the Minimum Benefit shown on the Schedule of Insurance.

## Eligible Offsets

If you or your family are eligible for any of the following benefits for loss of income as a result of the period of disability for which you are claiming benefits under this plan, the total of all monthly benefits and other amounts will be subtracted from your monthly benefit. This includes any

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 44 of 59   PageID #: 48

such benefits for which you or your family are eligible or that are paid to you, to your family, or to a third party on your behalf, pursuant to any of the following:

1. temporary disability benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law, or substitutes or exchanges for such benefits;
2. governmental law or program that provides disability or unemployment benefits as a result of your job with the employer;
3. a plan or arrangement of coverage, whether insured or not, as a result of employment by or association with the employer or as a result of membership in or association with any group, association, union or other organization, including benefits required by state law, under an employer sponsored short term disability program or under a sick leave or salary continuation program;
4. an individual insurance policy where the premium is wholly or partially paid by the employer;
5. mandatory "no-fault" automobile insurance plan;
6. disability benefits under:
   a. the United States Social Security Act, or alternative plan offered by a state or municipal government;
   b. the Railroad Retirement Act;
   c. the Canada Pension Plan, the Canada Old Age Security Act, the Quebec Pension Plan, or any provincial pension or disability plan; or
   d. similar plan or act
   
   that you, your spouse and children, are eligible to receive because of your disability; or
7. disability benefit from the Department of Veterans Affairs, or any other foreign or domestic governmental agency:
   a. that begins after you become disabled; or
   b. if you were receiving the benefit before becoming disabled, the amount of any increase in the benefit that is attributed to your disability.

Eligible Offsets also include any payments that are made to you or to a third party on your behalf, pursuant to any of the following:

1. disability benefit under the Employer's Retirement Plan;
2. permanent disability or impairment benefits under a Workers' Compensation Law, the Jones Act, occupational disease law, similar law, or substitutes or exchanges for such benefits;
3. portion of a settlement or judgment, minus associated costs, of a lawsuit that represents or compensates for your loss of earnings;
4. retirement benefit from a Retirement Plan that is wholly or partially funded by employer contributions, unless:
   a. you were receiving it prior to becoming disabled; or
   b. you immediately transfer the payment to another plan qualified by the United States Internal Revenue Service for the funding of a future retirement.
   
   Eligible Offsets will not include the portion, if any, of such retirement benefit that was funded by your after-tax contributions; or
5. retirement benefits under:
   a. the United States Social Security Act, or alternative plan offered by a state or municipal government;
   b. the Railroad Retirement Act;
   c. the Canada Pension Plan, the Canada Old Age Security Act, the Quebec Pension Plan, or any provincial pension or disability plan; or
   d. similar plan or act

that you, your spouse and children, receive because of your retirement, unless you were receiving them prior to becoming Disabled.

If you are paid benefits under any of the Eligible Offsets in a lump sum or settlement, you must provide proof satisfactory to us of:
1.  the amount attributed to loss of income; and
2.  the period of time covered by the lump sum or settlement. We will pro-rate the lump sum or settlement over this period of time. If you cannot or do not provide this information, we will assume the entire sum to be for loss of income, and the time period to be 24 months. We may make a retroactive allocation of any retroactive Eligible Offset. A retroactive allocation may result in an overpayment of your claim.

The amount of any increase in any of the Eligible Offsets will not be included as an Eligible Offset if such increase:
1.  takes effect after the date benefits become payable under this/your employer sponsored plan; and
2.  is a general increase which applies to all persons who are entitled to such benefits.

## Estimate of Benefits or Other Amounts
If you:
1.  are eligible for benefits or other amounts from any of the above sources; or
2.  it is reasonable to believe that you would be paid such benefits or other amounts if you had applied for them or had applied for them on time;

we will figure your monthly benefit as though you are receiving these other benefits, even if you are not.

For the purposes of this provision, we will estimate an amount equal to the amount you and your dependents would receive under the United States Social Security Act. This amount will reduce your monthly benefit beginning after five full months of disability. This reduction will continue unless you submit proof to us that you have applied for benefits under such Act, but you are not eligible to receive such benefits after completing the application and appeals processes, at least through the Administrative Law Judge hearing level, with the Social Security Administration. Any lump sum payment received by you shall be deducted immediately from your monthly disability benefits.

## Social Security Assistance
Your claim for Social Security disability benefits may be denied. If it is, we may provide you with assistance for your appeal.

## Adjustment of Benefits
If we find that the amount of benefit which we should have paid is different from the amount we actually paid you, we will adjust your benefit.

If we paid you less than we should have, we will pay you the difference.

If we paid you more than we should have, you or your estate must reimburse us within 60 days. If the overpayment was due to an error made by us, we must request reimbursement of the overpayment during the 15 month period following the date the overpayment was made. Any future benefits we determine to be due, including the Minimum Benefit, will be applied to the overpayment until we are reimbursed in full.

## Lump Sum Benefit

If you receive benefits from any source in a lump sum, we will pro-rate it over the time in which it accrued, based on information from the source of the payment. If we do not receive all the information we need, we will pro-rate the payment according to its nature and purpose.

## Benefit Freeze

We will not reduce your monthly benefit further if the amount of benefits from any source, other than the policy, changes because of a cost of living increase that occurs automatically or by law after you satisfy the elimination period.

## Waiver of Premium Benefit

While you are receiving benefits, your premiums do not have to be paid. However for coverage to be continued if you return to active work with the employer, premium payments must resume once you are no longer receiving benefits under the policy.

## Managed Rehabilitation

You may be eligible to receive vocational rehabilitation services. In order to be eligible for such services you must have the functional capability to successfully complete a rehabilitation plan.

Vocational rehabilitation services will include the preparation of a rehabilitation plan for you, with input from you and your physician. We, you, your physician, or your employer can begin the process of developing a rehabilitation plan. Vocational rehabilitation services may include, but are not limited to, payment of your medical expense, education expense, moving expense, or accommodation expense. We have the right to determine which services are appropriate.

If you return to work as part of a rehabilitation plan while you are disabled, we will pay your employer:

1.  100% of your salary, wages, partnership or proprietorship draw, commissions, or similar pay; or
2.  the Schedule Amount, if less;

for the first month after you return to work, or your remaining period of disability, if less.

If your disability ends while you are participating, with your full cooperation, in your rehabilitation plan, and you are not able to find gainful work, we will:

1.  pay you the amount of benefit, other than rehabilitation benefits, that would have been payable to you if you had remained disabled until:
    a.  3 months after your disability ends; or
    b.  the date you are able to find gainful work, if earlier; and
2.  provide or pay for reasonable job placement services for a period of up to 3 months after your disability ends.

Failure to participate with your full cooperation in the rehabilitation plan, without good cause, will result in the reduction or the termination of your long term disability insurance benefits. If benefits terminate, your long term disability insurance coverage under the policy will terminate. Reduction of benefits will be based on your projected income if you had met the goals of the rehabilitation plan. Benefits will be figured as though you were:

1.  actually working in the occupation contemplated in the rehabilitation plan; and
2.  earning the projected income amount.

If such work at the projected income amount would have resulted in the termination of your long term disability insurance benefits, your benefits will terminate as of the expected completion of the rehabilitation plan. "Good cause" means a medical reason preventing implementation of the rehabilitation plan.

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 47 of 59   PageID #: 51

We will make the final determination of any vocational rehabilitation services provided, of your eligibility for participation, and of any continued benefit payments.

## Survivor Benefit

If you die while entitled to benefits under the policy, we will pay a survivor benefit. We must receive proof of your death and proof that the person claiming the benefit is entitled to it. We will pay the survivor benefit only to your lawful spouse, if living, otherwise, to your children. Children must be under age 25. "Children" include step-children or foster children that depended on you for support and maintenance. Adopted children are also included. If there are no survivors living at your death, we will pay your estate.

The survivor benefit is one lump-sum payment equal to 3 times your monthly benefit amount without reduction for Eligible Offsets.

Payment of the survivor benefit is subject to the other provisions of the policy.

## Termination of Benefit Payments

We will terminate benefit payments on the earliest of the following dates:

1. the date you are no longer disabled as defined; or
2. the date you fail to furnish Proof of Loss, when requested by us; or
3. the date you are no longer under the regular care of a physician, or refuse our request that you submit to an examination by a physician; or
4. the date you die; or
5. the date your current monthly earnings exceed:
    a. 80% of your indexed pre-disability earnings if you are receiving benefits for being disabled from your regular occupation; or
    b. an amount that is equal to the product of your indexed pre-disability earnings and the benefit percentage not to exceed 60%, if you are receiving benefits for being disabled from any gainful occupation; or
6. the date you refuse to receive recommended treatment that is generally acknowledged by physicians to cure, correct or limit the disabling condition; or
7. the date you refuse to participate in your rehabilitation plan, or refuse to cooperate with or try:
    a. modifications made to the work site or job process to accommodate your identified medical limitations to enable you to perform the material duties of your regular occupation;
    b. adaptive equipment or devices designed to accommodate your identified medical limitations to enable you to perform the material duties of your regular occupation;
    c. modifications made to the work site or job process to accommodate your identified medical limitations to enable you to perform the material duties of any gainful occupation, if you were receiving benefits for being disabled from any gainful occupation; or
    d. adaptive equipment or devices designed to accommodate your identified medical limitations to enable you to perform the material duties of any gainful occupation, if you were receiving benefits for being disabled from any gainful occupation;
    provided, a qualified physician agrees that such modifications, adaptive equipment, or rehabilitation plan, accommodate your medical limitations; or
8. the date you receive retirement benefits from any employer's Retirement Plan, unless:
    a. you were receiving them prior to becoming disabled; or
    b. you immediately transfer the payment to another plan qualified by the United States Internal Revenue Service for the funding of a future retirement; or

LTD-C (5-09)                              26

9. the date determined by the Maximum Benefit Period table shown in the Schedule of Insurance; or
10. the date no further benefits are payable under any provision in the policy that limits benefit duration; or
11. after 12 months of payments if you are considered to reside outside the U.S. or Canada. You will be considered to reside outside these countries when you have been outside the U.S. or Canada for a total period of 6 months or more during any 12 consecutive months of benefits.

We will not pay benefits if:
1. your employer, the policyholder, or an associated company has offered you the opportunity to return to limited work while you are disabled;
2. you are functionally capable of performing the limited work which is offered; and you do not return to work when scheduled.

Benefits will end as of the date you were first scheduled to return to work.

## Extension of Benefit Payments

If you are entitled to benefits while disabled and the policy terminates, benefits:
1. will continue as long as you remain disabled by the same disability, but
2. will not be provided beyond the date we would have ceased to pay benefits had the insurance remained in force.

Termination of the policy for any reason will have no effect on our liability under this provision.

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 49 of 59   PageID #: 53

## Section 8 – Limitations and Exclusions

**Alcoholism, Drug Addiction, Chemical Dependency, and Mental Illness Limitation**
We pay only a limited benefit for a period of disability due to alcoholism, drug addiction, chemical dependency and mental illness. The Maximum Benefit Period for all such periods of disability is a total of 24 months. This is not a separate maximum for each such condition, or for each period of disability, but a combined maximum for all periods of disability and for all of these conditions.

Your period of disability will be considered due to alcoholism, drug addiction, chemical dependency or mental illness if:
1. you are limited by one or more of the stated conditions; and
2. you do not have other conditions which, in the absence of the stated conditions, would continue to exist, limit your activities, and lead us to conclude that you were disabled.

Benefits may be payable for more than 24 months, but not beyond the Maximum Benefit Period in the Schedule of Insurance, if you
1. are hospital confined at the end of the 24-month period above, and
2. remain disabled.

Benefits will be payable for the length of your confinement and for up to 60 days following the end of your confinement but not beyond the Maximum Benefit Period in the Schedule of Insurance.

If you are hospital confined again during the 60-day period for at least 14 consecutive days, benefits will be payable for the length of the second confinement and for up to 60 days following the end of the second confinement.

### Pre-Existing Condition Exclusion
Benefits will not be paid if your disability begins in the first 12 months following the effective date of your coverage and your disability is caused by, contributed to by, or the result of a pre-existing condition, unless you had no treatment of the pre-existing condition for 6 consecutive months after your effective date of coverage.

**Pre-Existing Condition** means any condition for which you have done any of the following at any time during the 3 months just prior to your effective date of coverage:
1. received medical treatment or consultation;
2. taken or were prescribed drugs or medicine; or
3. received care or services, including diagnostic measures,
whether or not that condition is diagnosed at all or is misdiagnosed during that period of time.

### Exclusions
We will not pay benefits for any time you are confined to any facility because you were convicted of a crime or public offense.

We will not pay benefits for any disability caused by:
1. war or any act of war, or while serving in the armed forces of any country or international authority;
2. attempted suicide or intentional self-inflicted injury, while sane or insane; or
3. your active participation in a riot or insurrection; or
4. your voluntary commission of, or attempting to commit, an assault or a felony; or participating in an illegal occupation; or

LTD-C (5-09)  28

5. injury occurring while intoxicated; or
6. elective or cosmetic surgery, except for surgery to repair damage to the natural body caused by an injury or treatment of a sickness; or
7. your acting as an organ donor.

No benefits are payable for any period of disability during which you are incarcerated in a penal or correctional facility for a period of 30 or more consecutive days.

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 51 of 59   PageID #: 55

## Section 9 – Continuity of Coverage

**Definitions**
**Prior plan** means the policyholder's plan of group long term disability insurance, if any, under which you were insured on the day before the effective date of this policy.

**Prior plan benefits** mean the benefits, if any, that would have been paid to you under the prior plan had it remained in effect, and had you continued to be insured under the prior plan.

**Continuity of Coverage**
We will provide continuity of coverage as described below if you were covered under the prior plan.

If you are actively at work on the effective date of this policy and otherwise eligible to become insured under this policy, you will be insured under this policy.

If you are not at active work on the effective date of the policy due to a reason other than a disability, and would otherwise be eligible to become insured under the requirements of this policy, we will cover you for the lesser of what you would receive under this policy or what you would receive under the prior plan benefits until the earliest of:
1. the date you return to active work;
2. the end of any period of continuance of the prior plan; or
3. the date coverage ends, according to the provision of the policy.

Any benefits payable under the conditions described above will be paid by us:
1. as if the prior plan had remained in effect; and
2. will be reduced by any benefits paid or payable by the prior plan.

If you were covered under the prior plan on the day before the effective date of this policy but were not actively at work due to a disability, you are not eligible to become insured under this policy.

**Prior Plan Credit for Long Term Disability Insurance**
The benefits payable for disability due to a pre-existing condition are limited or excluded unless you meet certain requirements. For any disability which would be limited or excluded during the time period to which this limitation or exclusion applies, we will give you credit for the length of time you were covered under the prior plan. Benefits provided will be the lesser of:
1. the benefits of the policy without the pre-existing conditions provision, or
2. prior plan benefits (applying the prior plan's pre-existing conditions provision, if any) just as if it had remained in effect.

The pre-existing conditions limitation or exclusion of this policy will apply to the amount of any benefit increase which results from a change from the prior policy to this policy.

If you are not eligible for benefits under the prior plan or benefits under this policy, no benefit will be paid.

The definition of period of disability in the policy describes the conditions that must be met for two or more disabilities to be considered as having occurred during one period of disability. This allows you to avoid having to satisfy a separate elimination period for each disability. If you received benefits under the prior plan, and have a recurrence of the same disability within 6 months of your return to active work while insured under the policy, and there are no benefits available for the recurrence under the prior policy, we will apply this definition as though the

Case 3:15-cv-00326-PLR-HBG   Document 1-1   Filed 07/29/15   Page 52 of 59   PageID #: 56

policy had been in effect since the date you first became disabled, and not require fulfillment of a new elimination period. Benefits paid under this scenario will be those eligible under the prior plan.

## Important Notice

To comply with Tennessee Insurance Rule 0780-1-57, the following information is provided to assist you in answering any questions you might have. Our Policyholder Service Office is:

USAble Life
P. O. Box 1650
Little Rock, AR 72203-1650
Toll Free (800) 370-5856

We appreciate the opportunity to serve your insurance needs.

 **USAble Life**

P.O. Box 1650 • Little Rock, AR 72203-1650
(501) 375-7200 • (800) 648-0271

## Cost of Living Adjustment Rider

This rider is made part of the policy or certificate issued by USAble Life to which it is attached.

It takes effect on May 1, 2010, and expires at the same time as the policy or certificate.

It only applies to disabilities which start on or after this date.

### Cost of Living Adjustment

On each anniversary of the day after the elimination period ends, any benefit payable will be multiplied by 1.00 plus 3%.

If you are disabled past the anniversary, the benefit to be multiplied by the above factor will include any past adjustment(s).

Your benefit may be increased in this way through the 5th anniversary of the day after the elimination period ends.

### When Coverage Under This Rider Ends

Coverage under this rider ends on the earliest of the following dates:
1. the date your coverage under the policy ends;
2. the date your eligible class is no longer covered for this rider; or
3. the last day of the period for which any required premium contributions for this rider are made.

This rider is subject to all provisions of the group policy which are not inconsistent with the terms of this rider.

Signed for USAble Life at Little Rock, Arkansas, as of the effective date:

James L. Towse

President

Secretary

LTD-COLA (5-09)                    1



P.O. Box 1650 • Little Rock, AR 72203-1650
(501) 375-7200 • (800) 648-0271

---

## Medical and COBRA Premium Benefit Rider

This rider is made part of the policy or certificate issued by USAble Life to which it is attached.

It takes effect on May 1, 2010, and expires at the same time as the policy or certificate.

It only applies to disabilities which start on or after this date.

If you become disabled and qualify for long term disability benefits, you will also be eligible to receive an additional benefit as described below:

### Definitions
**COBRA** means the Consolidated Omnibus Budget Reconciliation Act.

**COBRA Medical Coverage** means the continuation of medical coverage under your employer's plan as provided for under the Consolidated Omnibus Budget Reconciliation Act (COBRA).

**Medical Coverage** means insurance provided under your employer's group health or medical plan that pays for your medical, hospital or surgical expenses.

### When Medical and COBRA Premium Disability Benefits Are Payable
Medical and COBRA Premium Disability Benefits are payable for you if you meet all of the following requirements:
1. you are covered under this rider;
2. you are earning less than 20% of your pre-disability earnings;
3. you are receiving or are eligible to receive a monthly benefit due to disability under the policy; and
4. you are paying premiums for medical coverage or COBRA medical coverage under your employer's plan.

Benefits for a payable claim begin the day after you satisfy all of the requirements above.

### Amount of Medical and COBRA Premium Disability Benefit Payment
If you are covered under the Medical and COBRA Premium Disability Benefit Rider, we will pay you an additional disability benefit per month, equal to the lesser of:
1. the amount of the monthly premium you are paying for yourself only, for medical coverage or COBRA medical coverage, or
2. $500.

Your payment under this rider will not be reduced by any deductible sources of income listed in the policy.

If you are eligible to receive benefits under this rider for less than 1 month, we will send you 1/30th of your payment for each day of disability.

### Duration of Medical and COBRA Premium Disability Benefit Payments
We will send you payments under this rider until the earliest of the following:
1. the date you are no longer receiving or are no longer eligible to receive a benefit under the policy;

LTD-COBRA (5-09)                              1

2. the date you are no longer disabled under the terms of the policy;
3. the date you have received 18 months of payments for a combination of medical coverage and COBRA medical coverage;
4. the last day you are covered for medical coverage;
5. the end of your COBRA medical coverage period, not to exceed 18 months;
6. the last day of the period for which you qualify for COBRA medical coverage; or
7. the date you failed to give us the required proof that you are paying premiums for medical coverage or COBRA medical coverage.

## Exclusions and Limitations
All exclusions and limitations of the policy apply to this rider.

## Claims
The Claim Provisions section of the policy applies to this rider. You must also submit proof, in a form acceptable to us, of your medical coverage or COBRA medical coverage premiums that you have paid for yourself.

We may apply the benefits due to you under this rider to recover any overpayment that may exist on your claim under the policy.

## When Coverage Under This Rider Ends
Coverage under this rider ends on the earliest of the following dates:
1. the date your coverage under the policy ends;
2. the date your eligible class is no longer covered for this rider; or
3. the last day of the period for which any required premium contributions for this rider are made.

This rider is subject to all provisions of the group policy which are not inconsistent with the terms of this rider.

Signed for USAble Life at Little Rock, Arkansas, as of the effective date:

James L. Towse

Secretary

Jason Mann

President



# STATE OF TENNESSEE
## Tre Hargett, Secretary of State
Division of Business Services
William R. Snodgrass Tower
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

## Filing Information

Name:   **PYA Analytics, LLC**

### General Information

| | | | |
|---|---|---|---|
| SOS Control # | 000715408 | Formation Locale: | TENNESSEE |
| Filing Type: | Limited Liability Company - Domestic | Date Formed: | 04/08/2013 |
| | 04/08/2013 3:17 PM | Fiscal Year Close | 12 |
| Status: | Active | Member Count: | 17 |
| Duration Term: | Perpetual | | |
| Managed By: | Manager Managed | | |

**Registered Agent Address**
EDWARD V PERSHING
2220 SUTHERLAND AVE
KNOXVILLE, TN 37919-2350

**Principal Address**
2220 SUTHERLAND AVE
KNOXVILLE, TN 37919-2350

The following document(s) was/were filed in this office on the date(s) indicated below:

| Date Filed | Filing Description | Image # |
|---|---|---|
| 04/02/2015 | 2014 Annual Report | B0081-3044 |
| 04/01/2014 | 2013 Annual Report | 7315-2463 |
| | Member Count Changed  From: 1  To: 17 | |
| | Managed By Changed  From: Director Managed  To: Manager Managed | |
| 04/08/2013 | Initial Filing | 7183-1666 |

| Active Assumed Names (if any) | Date | Expires |
|---|---|---|

Service of Process
**Dept. of Commerce & Insurance**
**500 James Robertson Pkwy.-7th Floor**
**Nashville TN 37243**

CERTIFIED MAIL™

7012 3460 0002 8949 8799

FIRST CLASS

UNITED STATES POSTAGE
PITNEY BOWES

02 1M          **$ 09.43⁰**
0004292626      JUL 06 2015
MAILED FROM ZIP CODE 37243

7012 3460 0002 8949 8799          07/01/2015
USABLE LIFE INSURANCE COMPANY
2908 POSTON AVENUE, % CORP. SVC. CO.
NASHVILLE, TN 37203